## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | **Bankruptcy No. 14-22214-JAD** |
| | : | |
| **CASTLE CHEESE, INC.,** | : | **Chapter 7** |
| | : | |
| Debtor. | : | |
| ——————————————X | : | |
| | : | |
| **CASTLE CHEESE, INC.,** | : | **Adversary No. 15-02006-JAD** |
| | : | |
| Plaintiff, | : | |
| | : | **Doc. No. 16** |
| v. | : | |
| | : | |
| **FIRSTMERIT BANK, N.A.,** | : | |
| | : | |
| Defendant. | : | |
| ——————————————X | | |

### MEMORANDUM OPINION

The matter before the Court is a Motion to Remand and/or Abstention filed by the Debtor and Plaintiff herein, Castle Cheese, Inc., against one of its secured creditors and the Defendant herein, FirstMerit Bank, N.A.  For the reasons set forth below, the motion is denied.

### I.

On or about May 30, 2014, Castle Cheese, Inc. (the "Debtor") commenced this bankruptcy case by filing a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Case").

On October 16, 2014, secured creditor FirstMerit Bank, N.A. ("FirstMerit") timely filed a proof of claim at Claim No. 25, as later amended on October 21, 2014 and June 25, 2015 (the "Proof of Claim").  In the Proof of Claim, FirstMerit asserts claims against the Debtor as a result of two loans (the

"Loans") extended by FirstMerit directly to the Debtor, and three additional loans (the "Additional Loans") that FirstMerit extended to entities related to the Debtor for which the Debtor guaranteed repayment, in the total amount of $6,249,324.56. (Doc. # 1, p. 2).[1]

As of the petition date, First Merit contends that its claim approximated $7 million (as a result of unpaid interest, attorneys' fees and other costs associated with collection). As of the date of this Memorandum Opinion, First Merit acknowledges that its claim has been reduced to approximately $2.14 million on account of recoveries it has had with respect to liquidation of collateral or other non-debtor assets to pay the claim. (See Amended Claim 25-3 filed 6-25-2015 at Case No. 14-22214-JAD).

About seven months after the commencement of this bankruptcy case and about two months after FirstMerit filed its Proof of Claim, the Debtor filed a complaint (the "Complaint") against FirstMerit on December 31, 2014 in the Court of Common Pleas of Butler County, Pennsylvania, at Docket No. 14-11095 (the "Lawsuit"). In the Lawsuit, the Debtor asserted claims sounding in breach of contract, tortious interference with contractual relations, commercial disparagement, and defamation. (Doc. # 1, Exhibit A).

Specifically, in the Complaint filed in the state court action, the Debtor avers that FirstMerit notified the Debtor that the Debtor was in default of the Loans on or about February 20, 2014, and "demanded immediate payment in

---

[1]      All docket citations refer to filings in the instant Adversary Case, unless otherwise stated.

an amount equal to the difference between the outstanding principal balances combined as compared to the borrowing base dated December 31, 2013." (Doc. # 1, Exhibit A, p. 8). Thereafter, a representative of FirstMerit is alleged to have "orally agreed to modify the original terms of the lending agreements . . . by placing the lending agreements which were allegedly in default in forbearance status and agreed to forego taking any negative actions against [the Debtor] in furtherance of the alleged defaults of the original lending agreements" if the Debtor paid $2,500,000 to FirstMerit by August 1, 2014 and the remaining balances of all related loans by December 31, 2014. (Id.).

Despite this purported oral modification, the Debtor asserts that FirstMerit then "breached the oral agreement" by again asserting the Debtor's default under the loan documents, and by demanding immediate payment of the entire principal amounts allegedly due plus interest, late charges, and applicable attorneys' fees. (Id. at p. 9). Further, the Debtor asserts that in connection with the demand for immediate payment, FirstMerit improperly contacted the Debtor's suppliers and/or customers demanding direct payment of amounts owed to the Debtor be paid directly to FirstMerit and threatening legal action against them if the sums outstanding were not paid to FirstMerit. (Id. at pp. 9-10).

On January 14, 2015, FirstMerit filed a Notice of Removal of the Lawsuit to this Court thereby initiating the instant adversary proceeding (the "Adversary Proceeding").

In support of the removal, First Merit asserted that the Lawsuit "involves claims exclusively related to or originating from" the two Loans extended directly to the Debtor, and that each of the Debtor's claims against FirstMerit "arises under or is related to this Chapter 11 proceeding." (Doc. # 1, p. 2).

FirstMerit further averred that the Lawsuit "is a core proceeding under 28 U.S.C. §157(b)(2) as it involves matters concerning the administration of the estate, counterclaims against the estate by persons or entities filing claims against the estate, and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or equity holder relationship." (Doc. # 1, p. 3).

In addition, because "[a]ll of the Debtor's claims are based upon or relate to alleged transactions and occurrences between the Debtor and FirstMerit in connection with the Loans and the . . . Proof of Claim," FirstMerit argued that "[a]s a matter of law and for the sake of judicial economy, all claims asserted in the [Lawsuit] should be referred" to this Court. (Id.).

The Debtor filed a Response to the Notice of Removal on January 20, 2015, asserting that "the removed claims and/or causes of action are non-core" proceedings, and that the Debtor "does not consent to entry of final orders or judgment by a bankruptcy judge" in the instant adversary proceeding. (Doc. # 6, p. 2).

FirstMerit then filed a response to the Debtor's assertion that the claims are non-core on January 27, 2015, asserting in part that the Lawsuit is "inextricably woven into the administration of its estate," as the Debtor's

chapter 11 plan of reorganization recognized that "[a]ny recovery from [the State Court Action] shall be the property of the Reorganized Debtor, except that Ten Percent (10%) of the Reorganized Debtor's net recovery from this litigation (after reasonable expenses), if any, shall be disbursed *pro rata* to the holders of Class 3 Claims." (Doc. # 11, p. 3).

On February 13, 2015, the Debtor then filed the instant Motion for Remand and/or Abstention (the "Motion") and a brief in support. (Doc. ## 16, 17). The Motion is brought pursuant to 28 U.S.C. § 1334(c)(2), which states in relevant part:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334.

In the Motion, the Debtor averred that this Court should abstain from hearing the claims asserted in the Lawsuit and remand the matter to state court, because the Lawsuit is a non-core proceeding based on state law claims or causes of action which do not "arise under" title 11 nor do they "arise in" a case under title 11. (Doc. # 17, pp. 5-6).

In response to a motion to dismiss filed by First Merit as to the substantive claims in the Complaint, the Debtor then filed an amended

complaint (the "Amended Complaint") on March 10, 2015, asserting the same causes of actions contained in the original Complaint. (Doc. # 30). For purposes of clarity, the Court would parenthetically note that the Amended Complaint was actually first filed on March 9, 2015 at Doc. # 27, but was refiled for technical docketing reasons on March 10, 2015 at Doc. # 30.

FirstMerit thereafter filed a Response to the Motion to Remand and/or Abstention on March 10, 2015, again averring that "any ... dispute regarding the interpretation of and/or the rights and obligations existing under the Loans will, unquestionably, concern, impact and have a direct bearing on the payment and satisfaction of the Loans and administration of Debtor's estate." (Doc. # 29, p. 2).

After a hearing was held on March 17, 2015, the Court ordered FirstMerit to file a supplemental brief and a motion to dismiss with respect to the Amended Complaint to the extent that First Merit still challenged the substantive components of the Debtor's Amended Complaint. (Doc. # 34). FirstMerit timely complied with the order (Doc. ## 36 and 37), and the Debtor filed responses shortly thereafter (Doc. ## 38 and 40).

Another hearing was held on April 20, 2015, at which time the Court took the Debtor's request to remand or abstain under advisement. The Court also took the substantive motion to dismiss the Amended Complaint under advisement as well. Subsequent to taking these dueling motions under advisement, the progress of the Debtor's chapter 11 case faltered.

On May 12, 2015, the Court denied confirmation of the Debtor's chapter 11 plan and denied approval of the disclosure statement. (Case No. 14-22214, Doc. # 524). Also on May 12, 2015, upon a motion of FirstMerit, the Debtor's Bankruptcy Case was converted to a case under chapter 7. (Case No. 14-22214, Doc. # 532).

Upon conversion of the case to chapter 7, Charles O. Zebley, Jr. (the "Interim Trustee") was appointed as Interim Trustee for the Debtor's bankruptcy estate the same day. (Case No. 14-22214, Doc. # 533). The Interim Trustee requested, and FirstMerit consented to, the Court holding this Adversary Proceeding in abeyance, and defer ruling on the pending motions, to enable the Interim Trustee to become familiar with the litigation and to facilitate the parties reaching an amicable settlement of the matter.

Various status hearings were held, and on June 18, 2015, the Interim Trustee filed a motion for authorization and approval of a compromise and settlement with FirstMerit (the "Motion for Approval of Compromise"), alleging that compromising and settling the Lawsuit would be in the bankruptcy estate's best interest. (Doc. # 51, ¶ 8).

On July 10, 2015, several parties including the Debtor, general unsecured creditor Socius Ingredients, LLC, administrative creditor Campbell & Levine, LLC, and administrative creditor Three Rivers Staffing, LLC, all filed objections to the Motion for Approval of Compromise. (Doc. ## 58, 60, 61, and 67). Hearings on the proposed settlement and objections were held and this Court did not accept the proposed settlement. Approval was not obtained

because, although the settlement purported to resolve this adversary proceeding, it also contemplated (without much meaningful explanation) that FirstMerit would receive the lion's share of any avoidance action recoveries in this chapter 7 case. The net result was that the rest of the creditor body would receive relatively little recoveries, if any. As such, the compromise was rejected and the parties agreed to continue to negotiate.

While negotiations were ongoing, a trustee election was held in the main bankruptcy case. The election was contested by FirstMerit, and the objection of FirstMerit was overruled. The net result was that the creditors elected John Steiner, Esq. as Chapter 7 Trustee (the "Trustee") and Mr. Zebley's tenure as Interim Trustee ended as of August 11, 2015 (which is the date the Court confirmed the election of Mr. Steiner as Chapter 7 Trustee).

Upon his appointment as Trustee, Mr. Steiner continued to attempt to procure a global settlement of this litigation, as well as competing claims against the Debtor's principal- Mr. George Myrter- who himself filed an intervening bankruptcy before this Court at Bankruptcy No. 15-21967-JAD on May 29, 2015. The Court would note that Mr. Myrter is concurrently engaged in similar litigation before this Court at Adversary No. 15-2123-JAD and his adversary raises defenses premised on the very same claims asserted in the Lawsuit. The net result is that this Court now has two sets of adversary proceedings where the gravamen of the claims and defenses are identical.

Numerous status hearings were held before the Court between August 11, 2015 and November 17, 2015. At the November 17, 2015 hearing, and

despite all of the good faith efforts of the Trustee, the Court was advised that all attempts to reach an amicable resolution failed. Consequently, the Motion is now ripe for decision.

## II.

In the Motion, the Debtor (and now its successor-in-interest the Trustee) initially argued that the Court should abstain from hearing the Lawsuit under either mandatory abstention or discretionary abstention principles.

Regarding mandatory abstention, the Third Circuit has stated that a district court "must" abstain if the following requirements are met: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction. Stoe v. Flaherty, 436 F.3d 209, 213 (3d Cir. 2006).

In examining these factors, it appears that mandatory abstention does not apply to the action *sub judice*. The Court reaches this conclusion because the parties have agreed that in the absence of the bankruptcy case, federal courts would have jurisdiction over this matter pursuant to the diversity subject-matter jurisdiction provisions of title 28. In essence, the parties agree that there is diversity of citizenship, and that the amount in controversy well exceeds the statutory threshold for diversity jurisdiction. (See Audio Recording

of Hearing Held March 17, 2015, Courtroom D (10:30 A.M.)).   As such, mandatory abstention does not apply as part (3) of the five part test enumerated above has not been met.

The Plaintiff now seeks abstention based solely on the permissive abstention provision of title 28, which is set forth in 28 U.S.C. § 1334(c)(1).

Section 1334(c)(1) provides, in pertinent part, that: "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).

According to applicable case law, permissive abstention applies to both core and non-core proceedings.  Bricker v. Martin, 348 B.R. 28, 34 (W.D. Pa. 2006), aff'd, 265 Fed. Appx. 141 (3d Cir. 2008).

As the late Judge Bentz of this Court previously observed, the Court has "considerable latitude in deciding whether to abstain."  In re Earned Capital Corp., 331 B.R. 208, 220-21 (Bankr. W.D. Pa. 2005) aff'd sub nom. Geruschat v. Ernst & Young LLP, 346 B.R. 123 (W.D. Pa. 2006) aff'd sub nom. In re Seven Fields Dev. Corp., 505 F.3d 237 (3d Cir. 2007); see also Bricker v. Martin, 348 B.R. at 34 ("The pertinent caselaw demonstrates that bankruptcy courts have considerable discretion to decide whether to abstain under section 1334(c)(1).").

In determining whether to exercise permissive abstention under § 1334(c) courts have considered one or more (not necessarily all) of twelve factors:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

In re Earned Capital Corp., 331 B.R. at 220 (citing In re Balco Equities, Ltd., Inc., 323 B.R. 85, 92–93 (Bankr.S.D.N.Y.2005)).

"Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." Id. at 221 (citing Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 6 F.3d 1184, 1189 (7th Cir. 1993)).

In fact, the Court's exercise of discretion in permissively abstaining should be "[g]uided by what will best ensure an economical and expeditious administration of the debtor's estate." Schaffler v. McDowell Nat'l Bank (In re Yobe), 75 B.R. 873, 876 (Bankr. W.D. Pa. 1987) (citing Harley Hotels Inc. v. Rains Int'l Ltd., 57 B.R. 773, 782 (M.D. Pa. 1985)). In any event, this Court

shall review all twelve factors below to best determine the applicability of permissive abstention in the instant case.

**(1)   The effect, or lack thereof, on the efficient administration of the estate if a Court recommends abstention.**

The Debtor avers that any abstention and remand of the Lawsuit "will have no effect on the efficient administration of the estate." (Doc. # 17, p. 7). The Court disagrees.

Any recovery of funds by the Trustee in the Lawsuit certainly will impact the administration of the estate, and litigating the claims in alternative places certainly would "no doubt impede the efficient administration of the bankruptcy estate" as the Trustee in this case has acknowledged that the estate really has no funds to mount significant costs that would be attendant to litigation in multiple forums. Marah Wood Prods., LLC v. Jones, 534 B.R. 465, 478 (D. Conn. 2015) (citing In re Calpine Corp., 354 B.R. 45, 50 (Bankr.S.D.N.Y.2006) (litigation in separate venues can cause a "significant burden and distraction" from efficiently managing the estate)).

The Court reaches this conclusion because, for example, the Trustee acknowledged at the November 17, 2015 hearing that the Trustee lacks sufficient resources to travel to FirstMerit's offices to conduct depositions.

In addition, the very issues raised by the Amended Complaint have formed the basis of George Myrter's own petition to open or strike judgment that is pending against First Merit at Adversary No. 15-2123-JAD (which, Mr.

Myrter removed to this Court). (Adversary No. 15-2123-JAD, Doc. #23, Adversary Transcript of Hearing Held June 30, 2015 at p. 8).

Given the similarity of the claims, the Trustee no doubt will want to participate in discovery in the action at Adversary No. 15-2123-JAD. Why should the Trustee be required to monitor dockets and participate in discovery in multiple courts with respect to litigation involving similar parties and the same issues? The fact of the matter is forcing the Trustee to wade into even more venues is inconvenient to the estate. As such, this Court finds this factor weighs toward declining permissive abstention. See In re Southwinds Assocs., Ltd., 115 B.R. 857, 862 (Bankr. W.D. Pa. 1990)(considering as part of the abstention analysis the expense and burden the estate would incur).

In addition, litigating the Lawsuit in this Court operates as a convenient forum to liquidate any of the remaining claims that may be due and owing to FirstMerit. This Court's conclusion is acute in this regard because damages, if any, recoverable by the Plaintiff against FirstMerit could be offset from the claims asserted by FirstMerit against the estate. See Pa. State Emps. Ret. Sys. v. Thomas (In re Thomas), 529 B.R. 628 (Bankr. W.D. Pa. 2015)(discussing setoff and recoupment, and applicability in bankruptcy).

Alternatively, to the extent the instant removed action lacks any merit whatsoever, the claims of FirstMerit become more liquidated and certain—thereby further enabling the Trustee to administer the estate to final distribution to creditors (to the extent that he is successful in finding and

liquidating other assets for the benefit of all creditors).  These facts weigh in favor of denying abstention.

**(2)    The extent to which state law issues predominate over bankruptcy issues.**

The second factor weighs toward abstention, as all of the claims asserted in the Lawsuit are state law claims.  FirstMerit argues that even though the claims are all rooted in state law, the claims are still related to the bankruptcy proceeding with intertwined factual and legal issues.  See Newby v. Enron Corp. (In re Enron Corp. Secs., Derivative & "ERISA" Litig.), 314 B.R. 354, 355-57 (S.D. Tex. 2004); Falck Props., LLC v. Parkvale Fin. Corp. (In re Brownsville Prop. Corp., Inc.), 469 B.R. 216, 226 (Bankr. W.D. Pa. 2012); see also Veldekens v. GE HFS Holdings, Inc. (In re Doctors Hosp. 1997, L.P.), 351 B.R. 813, 840 (Bankr. S.D. Tex. 2006) (even though state law issues did not implicate bankruptcy law, the court did not abstain from hearing such claims because the outcome of state court action could significantly affect the Plan).

While First Merit's argument in this regard is true, it does not support weighing this factor against abstention.  Rather, it more directly applies to whether the Lawsuit is "related to" the Bankruptcy Case, which is addressed by the sixth factor analyzed below.  As such, the Court finds this second factor in favor of abstention.

**(3)    The difficulty or unsettled nature of the applicable state law.**

Courts have held that there is no particular reason to remand a case where the state law issues are not "unique, unsettled, or difficult."  See e.g.,

-14-

Lindsey v. Dow Chem. Co. (In re Dow Corning Corp.), 113 F.3d 565, 571 (6th
Cir. 1997).

In the Lawsuit, the Debtor asserts claims in breach of an alleged oral
modification of a written contract, tortious interference with contractual
relations, commercial disparagement, and defamation. FirstMerit argues that
such claims are "well settled under the laws of the Commonwealth," (Doc. # 29,
pp. 20-21), and the Plaintiff has not disputed this contention. The Court
agrees that the state law issues are not unique, unsettled or difficult, and finds
that this third factor does not favor abstention.

**(4)    The presence of a related proceeding commenced in state
court or other non-bankruptcy court.**

In support of this factor, the Debtor argues that a remand of this case is
appropriate because FirstMerit is engaged in litigation relating to the Loans
against guarantors and third parties in separate state court actions, outside of
this Court (specifically, in Lawrence County, Pennsylvania and previously in
Butler County, Pennsylvania). However, FirstMerit notes that when those state
law actions were commenced, those third parties were not subject to
bankruptcy court jurisdiction, and that FirstMerit "has only engaged with
Debtor itself in the Bankruptcy Court context subsequent to its declaration of
bankruptcy." (Doc. # 29, p. 21). As such, it does not appear that First Merit
has been forum shopping. Moreover, FirstMerit's litigation against the Debtor
directly is ongoing solely in this Court.

In addition, as noted above, there is presently an action at Adversary No. 15-2123-JAD before this Court, in which the very claims asserted in this adversary proceeding are asserted by Mr. Myrter against FirstMerit. In those proceedings, Mr. Myrter has expressly consented to this Court's ability to enter final judgment in the action and he expressly removed that action to this Court. The presence of this litigation before this Court militates in the Court finding that the fourth factor weighs against abstention and/or remanding of these proceedings to another court.

**(5)  The jurisdictional basis, if any, other than 28 U.S.C. § 1334.**

As discussed above, the parties recognize that pursuant to 28 U.S.C. § 1332 the Lawsuit also falls within federal jurisdiction due to diversity of the parties and the amount in controversy. Thus, the Court finds this factor does not support abstention.

**(6)  The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.**

As determined by the Third Circuit, "related proceedings" are present whenever the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy" or whenever "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).

FirstMerit argues that, because the Lawsuit is based on FirstMerit's alleged breach of contract "involving the Loans described in the FirstMerit Proof of Claim, any . . . dispute regarding the interpretation of and/or the rights and obligations existing under the Loans will, unquestionably, concern, impact and have a direct bearing on the payment and satisfaction of the Loans and administration of Debtor's estate." (Doc. # 29, p. 2).  This Court agrees.

No doubt, the Lawsuit "involves enforcement of the Loans at issue in the First Merit Proof of Claim" and implicates identical parties to those in the Proof of Claim.  (Doc. # 29, p. 6).  The outcome of the Lawsuit will also impact the amount of recovery on behalf of the Trustee and the ultimate liquidation and distribution of the Debtor's bankruptcy estate.  Thus, as FirstMerit claims, "the outcome of the [Lawsuit] will alter the Debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and will directly impact the handling and administration of the Debtor's estate."  (Id.).  This sixth factor therefore does not support abstention.

### (7)   The substance rather than form of an asserted "core" proceeding.

While the Debtor denies that the Lawsuit is a core proceeding under 28 U.S.C. §157(b)(2), FirstMerit argues that it is core as it involves matters "concerning the administration of the estate, counterclaims against the estate by persons or entities filing claims against the estate, and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or equity holder relationship." (Doc. # 1, p. 3).

This Court finds that the substance of the Lawsuit is the functional equivalent to a counterclaim to FirstMerit's proof of claim, and therefore is a core proceeding.

It is evident that the Lawsuit filed against FirstMerit calls into question some of the basic terms of FirstMerit's loan agreements with the Debtor—namely, the default and enforcement provisions upon which FirstMerit relied in pursuing the pre-petition debt and in exercising its remedies against the Debtor. As to these matters, FirstMerit contends that its rights and obligations are embodied in the written instruments signed by the parties and such documents are an integral part of its Proof of Claim. The Debtor, however, contends that those agreements were orally modified and that FirstMerit is liable (both in contract and for commercial torts) for its conduct.

Given these circumstances, the Court is unclear as to how any determination of the Lawsuit would not have an impact upon the allowance or disallowance of FirstMerit's claim. In fact, it appears to the Court that any liability that First Merit may have could be offset against its claim against the estate. And again, as set forth above, if the Lawsuit is not resolved in favor of the estate, the cloud over the claims of FirstMerit dissipates thereby adding certainty to the universe of creditor claims that the Trustee has to address in this case.

The Court therefore agrees with FirstMerit that the substance of the Lawsuit is in effect a counterclaim to the Proof of Claim. See Nat'l Equip. & Mold Corp. v. Apollo Tire Co., Inc., (In re Nat'l Equip. & Mold Corp.), 60 B.R.

133, 136-37 (Bankr. N.D. Ohio 1986) (adversary action brought by a debtor to recover money for goods and services rendered on an account receivable "actually involve[d] the determination as to the allowance or disallowance of Apollo's claim" and thus would "have a dispositive effect on the adjustment of the debtor-creditor relationship," and as such constituted a core proceeding); see also Residential Funding Co., LLC v. UBS Real Estate Secs., Inc. (In re Residential Capital, LLC), 515 B.R. 52 (Bankr.S.D.N.Y.2014)(debtor's removed action asserting state law breach of contract was counterclaim to creditor's proof of claim and was therefore core proceeding weighing against permissive abstention); Asousa P'ship v. Pinnacle Foods, Inc. (In re Asousa P'ship), 276 B.R. 55, 66 (Bankr. E.D. Pa. 2002)(noting that counterclaims that could affect allowance or disallowance of proof of claim are part and parcel of claims allowance process and subject to equitable jurisdiction of bankruptcy court); see generally Ralph Brubaker, A "Summary" Statutory and Constitutional Theory of Bankruptcy Judges' Core Jurisdiction After Stern v. Marshall, 86 Am. Bankr. L. J. 121 (2012).

This Court's conclusion is further supported by the fact that the Bankruptcy Code expressly grants this Court the power to allow, disallow, and reconsider claims, "which is of 'basic importance in the administration of a bankruptcy estate.'" Katchen v. Landy, 382 U.S. 323, 329, 86 S.Ct. 467, 472, 15 L.Ed.2d 391 (1966) (citing Gardner v. State of New Jersey, 329 U.S. 565, 573, 67 S.Ct. 467, 471, 91 L.Ed. 504).

The Supreme Court has noted that "[t]his power to allow or to disallow claims includes 'full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based. This is essential to the performance of the duties imposed upon it.'" Katchen v. Landy, 382 U.S. at 329, 86 S.Ct. at 472 (citing Lesser v. Gray, 236 U.S. 70, 74, 35 S.Ct. 227, 228, 59 L.Ed. 471).

Since the Lawsuit is a core proceeding, the seventh factor enumerated above weighs in favor of denying the abstention request.

**(8)  The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.**

FirstMerit argues that allowing the Lawsuit to be heard in state court could result in inconsistent decisions. Specifically, FirstMerit avers that the Debtor (and now its successor in interest, the Trustee) "seeks a finding in the [Lawsuit], in part, that it has not defaulted on the Loans and instead FirstMerit breached the orally modified agreements," and "[a]s a result, there is a risk of inconsistent decisions if the [Lawsuit] is remanded. " (Doc. # 29, p. 22). This Court agrees.

The fact is, the final allowance of the FirstMerit claims would preclude any collateral state court action premised on the validity (or invalidity) of First Merit's enforcement of its loan agreements. See Katchen v. Landy, 382 U.S. at 334, 86 S.Ct. at 475 ("a creditor who offers a proof of claim and demands its allowance is bound by what is judicially determined; and if his claim is rejected, its validity may not be relitigated in another proceeding on the claim.")

(citing Wiswall v. Campbell, 93 U.S. 347, 351; Sampsell v. Imperial Paper
Corp., 313 U.S. 215, 218-219, 61 S.Ct. 904, 906-907, 85 L.Ed. 1293; Lesser v.
Gray, 236 U.S. 70, 75, 35 S.Ct. 227, 229, 59 L.Ed. 471) (internal citations
omitted).    Under these circumstances, the feasibility of severing the Lawsuit
from the bankruptcy case where the allowance of FirstMerit's claims would be
decided, is suspect.    Accordingly, the weight of the eighth factor is in favor of
denial of the abstention request.

    **(9)**    **The burden on the Court's docket.**

Because both courts at issue here are busy but capable, this factor does
not weigh significantly toward abstaining or refusing to abstain from hearing
the Lawsuit.

    **(10)**    **The likelihood that the commencement of the proceeding in a
bankruptcy court involves forum shopping by one of the
parties.**

The Debtor points to confession of judgments that FirstMerit has filed
against third parties in state court to suggest FirstMerit is forum shopping.
However, as FirstMerit explains, such confession of judgments "relate only to
individuals and entities which are not parties to the Bankruptcy Case," and
this Court "has no jurisdiction over [the defendants] in the [c]onfession of
[j]udgment actions."  (Doc. # 29, p. 21).  As such, it does not appear that
FirstMerit is forum shopping and this Court does not find this factor to heavily
weigh in favor of abstaining.

In addition, the Debtor's principal was unhappy with a confessed
judgment entered against him in Butler County, Pennsylvania.  As a result, he

petitioned to open or strike the judgment.    While those proceedings were
pending, a charging lien was imposed by the state court against alleged assets
of Mr. Myrter.    Unsatisfied further with those events, he removed the state
court action to this Court at Adversary No. 15-2123-JAD.    While those matters
are pending (and this Court is conducting a *de novo* review of the
appropriateness of the charging lien), it can be contended that the aura
surrounding the timing of the removal by Mr. Myrter has a hue of forum
shopping.    Regardless, this Court finds that this tenth factor weighs in favor of
denial of the request to remand and/or abstain.

**(11)   The existence of a right to a jury trial.**

The Debtor demanded a jury trial with respect to the claims asserted in
the Lawsuit.[2]   Just because the Debtor made such a demand does not mean

---

[2]      Pursuant to the Seventh Amendment of the U.S. Constitution, "[i]n Suits at common
law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall
be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the
United States, than according to the rules of the common law." U.S. Const. Amend. VII.
        In Granfinanciera, S.A. v. Nordberg, the United States Supreme Court described a two-
part test for determining whether a claim is legal or equitable for purposes of the Seventh
Amendment: "[f]irst, we compare the . . . action to 18th-century actions brought in the courts
of England prior to the merger of the courts of law and equity.  Second, we examine the remedy
sought and determine whether it is legal or equitable in nature."  Granfinanciera, S.A. v.
Nordberg, 492 U.S. 33, 42, 109 S.Ct. 2782, 2790 (citing Tull v. United States, 481 U.S. 412,
417-18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987)).  The court also noted that "[t]he second
stage of this analysis is more important than the first." Id.  Looking at the nature of the relief
sought in the Lawsuit supports the argument that the Plaintiff is entitled to a jury trial.  Those
claims sound in breach of contract and tortious interference and other similar claims.  Such
causes of action have been recognized to trigger a right to trial by jury.  See e.g., In re Jensen,
946 F.2d 369, 371 (5th Cir. 1991) ("Tortious interference with contractual or business relations
was not a generally recognized cause of action until the 1850's, long after the enactment of the
Seventh Amendment.  However, it is analogous to certain causes of action that were brought in
courts of law in the 18th century in order to protect contractual relationships from third-party
interferences.") (internal citations omitted).  See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 476,
82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962) ("insofar as the complaint requests a money judgement
it presents a claim which is unquestionably legal").

that this factor resolves in favor of remanding the Lawsuit to the state courts. The Court reaches this conclusion because a close inspection of the loan documents between the parties reveals that the parties' agreements contain a mutual waiver of the right to a jury trial.

For example, the following language appears in both the Promissory Note dated December, 8, 2011 and the Promissory Note dated January 22, 2003: "JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other." (Doc. # 37, Exhibit 1, p. 2; id. at Exhibit 6, p. 2).

Similar language appears in the Commercial Security Agreement dated May 25, 2010, the Business Loan Agreement dated August 30, 2011, and the Commercial Security Agreement dated December 8, 2011, which states: "Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party." (Doc. # 37, Exhibit 3, p. 5; id. at Exhibit 5, p. 7; id. at Exhibit 7, p. 5).

Another jury waiver provision is also contained in the Master Agreement between the parties, dated December 8, 2011; and this document states as follows: "Waiver of Jury Trial. Each party hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all rights it may have to trial by jury in respect of any proceedings arising out of or relating to this Agreement or any Transaction and acknowledges that it and the other party have been induced to enter into this Agreement by, among other things, these mutual waivers." (Doc. # 37, Exhibit 10, p. 18).

Lastly, the Commercial Guaranty provides that "Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other." (Doc. # 37, Exhibit 9, p. 7).

The Debtor, however, argues that the waiver provisions are ineffective because "the waiver provisions are limited in scope and apply, if at all, only in the Lender/Borrower context of the loan agreements," and that the Plaintiff's causes of action "do not arise out of the loan agreements, but instead out of FirstMerit's wrongful/tortious conduct." (Doc. # 40, p. 4). The Debtor's argument are unconvincing for a couple of reasons.

First, the mutual jury waivers themselves are not as limited as the Debtor would suggest. This conclusion is evident because the plain language of the jury waiver provisions provide that the waivers do not apply solely to actions based on the written documents. Rather, they apply to "any action, proceeding or counterclaim" between FirstMerit and the Debtor (whether pursuant to the loan documents or not). The Lawsuit by the Debtor against FirstMerit is no doubt "any action, proceeding or counterclaim" as provided in the jury waiver provisions of the loan documents.

This conclusion is further supported by the fact that other courts have held that the "any action" type language utilized by the Debtor and First Merit in their loan documents is sufficient to draw into the ambit of the jury waiver those claims or causes that arise out of (or are related to) alleged injuries caused by improper contract enforcement by a defendant. See e.g., Telum, Inc.

v. E.F. Hutton Credit Corp., 859 F.2d 835, 838 (10th Cir. 1988)(enforcing

waiver even though claims of "fraudulent inducement" were present); Phoenix

Four Grantor Trust #1 v. 642 North Broad Street Assocs., No. Civ. A. 00-597,

2000 WL 1717261, at *3 (E.D. Pa. Nov. 15, 2000)(even though "counterclaims

do not arise directly under the three agreements that contain jury trial waivers,

the claims involve documents expressly within the purview of the term 'loan

documents' as defined in the three primary agreements" ); Today's Man, Inc. v.

Nationsbank, N.A., No. Civ. A. 99-479, 2000 WL 822500 (E.D. Pa. June 22,

2000) (finding that plaintiff's claims fell within the "sweeping" language of the

waiver of the right to trial by jury); Curtis Ctr. Ltd. P'ship v. Sumitomo Trust &

Banking Co., Civ. A. No. 95-1465, 1995 WL 365411 (E.D. Pa. June 15, 1995)

(same); Levinson v. Green Tree Servicing, No. 8:14-cv-02120-EAK-TGW, 2015

WL 1912276, at *2 (M.D. Fla. Apr. 27, 2015) ("[P]laintiffs' consumer protection

claims [under the Fair Debt Collection Practices Act and the Florida Consumer

Collection Practices Act] relate to the mortgage contract. Plaintiffs knowingly

and voluntarily waived their right to a jury trial upon signing the mortgage,

thereby creating a valid waiver of jury trial."); Fleeger v. Wachovia Bank, No.

5:12-CV-294-Oc-32PRL, 2013 WL 1760190 (M.D. Fla. Apr. 24, 2013)(claims for

negligent   misrepresentation,   negligence,   fraudulent   misrepresentation,

conspiracy to commit fraud and breach of fiduciary duty fell within ambit of

jury waiver found in mortgage); Wisthle Inv. Grp., LLC v. CR Hancock Bridge,

LLC, No. 2:08-cv-281-FtM-DNF, 2008 WL 2686963, at *1-2 (M.D. Fla. June 30,

2008)(claim for fraud was an "action" between the parties as provided in the

waiver and "relate to" the agreement); see also L & R Realty v. Connecticut Nat'l Bank, 715 A.2d 748 (Conn. 1998)(party asserting lender liability claims waived right to jury trial under loan documents that provided for such a waiver with respect to "any proceeding" between the parties) and Wilmington Trust Co. v. Renner's Paving, LLC, C.A. No. N10L-11-147CEB, 2013 WL 1442366 (Del. Super. Mar. 27, 2013)(counterclaim for breach of forbearance agreement fell within ambit of jury trial waiver as set forth in loan documents because the loan documents waived right to jury trial with respect to any dispute between the parties).

Second, based on the state of the record so far, the jury trial waivers appear to be enforceable.[3] The Court makes this observation even though the law is unclear as to which party bears the burden of proof as to the enforceability of contractual jury trial waivers. Compare Leasing Serv. Corp. v. Crane, 804 F.2d 828, 833 (4th Cir. 1986)(burden is on party seeking enforcement of waiver) and K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 758 (6th Cir. 1985)(burden is on party seeking invalidation of waiver). Assuming First Merit has the burden of proof on this issue, the current weight of the record supports FirstMerit's contention.

According to applicable case law, the question of a waiver of a Seventh Amendment right to a jury trial is a federal question controlled by federal law.

---

[3]     FirstMerit has not yet filed a petition to strike the Debtor's jury demand. Inasmuch as no petition is pending, the Court is making no final finding or conclusion as to the merits of the jury trial waiver. Rather, such final conclusion is left for another day and the Court's observations in this Memorandum Opinion relate solely to the current state of the record (in the context of the Debtor's motion to remand and/or abstain).

See Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); In re City of Phila. Litig., 158 F.3d 723, 726 (3d Cir. 1998).  Using federal law to determine the jury trial right assures "the uniformity in its exercise which is demanded by the Seventh Amendment."  Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963).

Because the "right of jury trial is fundamental, courts indulge every reasonable presumption against waiver."  Collins v. Gov't of Virgin Islands, 366 F.2d 279, 284 (3d Cir.1966)(citing Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81 L.Ed. 1177 (1937)).  Nevertheless, as with other constitutional rights, the United States Supreme Court has long recognized that a private litigant may waive the right to a jury trial in a civil case.  Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 848–849, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); City of Phila. Litig., 158 F.3d at 726; see also Fed.R.Civ.P. 38.

To be valid, a jury waiver must be made knowingly and voluntarily based on the facts of the case.  Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007)(citing Brookhart v. Janis, 384 U.S. 1, 4-5, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966)).  In its brief, the Debtor concludes that the waiver at issue was not "knowingly and voluntarily" given, but offers no facts supporting such a conclusion.  As such, the Court is, in essence, asked to be a soothsayer and guess what those facts are.

Conversely, FirstMerit has attached to its pleadings a number of the loan documents which indicate that the Debtor not only repeatedly executed the

loan documents, but that those documents signed by Mr. Myrter clearly and conspicuously provided for the waivers at issue.

That the jury waivers are clear and conspicuous is one factor supporting the enforceability of the jury trial waivers. Hydramar, Inc. v. General Dynamics Corp., Civ. A. No. 85-1788, 1989 WL 159267, at *2 (E.D. Pa. Dec. 29, 1989). Other factors that the Court can consider include: whether there was gross disparity of bargaining power between the parties, the business or professional experience of the party opposing the waiver, and whether the party opposing the waiver had an opportunity to negotiate terms. Id.  For purpose of clarity, these are factors that the Court considers in canvassing the totality of the circumstances surrounding the entry into the waiver agreement and not all of these factors must be found in order to render the waiver a nullity. See e.g., Bishop v. GNC Franchising, LLC, No. 05-cv-0827, 2006 WL 226651, at *2 (W.D. Pa. Jan. 13, 2006)("although plaintiffs argue that a high-ranking GNC executive told them that the agreements were not negotiable, and that they did not have an attorney present, those two facts are not sufficient to nullify the contractual terms to which they knowing and voluntarily agreed to be bound").

Nevertheless, comparing the existing record to the majority of the factors set forth above supports the waiver.  First, there is no evidence of *gross* disparity of bargaining power between the parties and the Debtor has not alleged any.  Second, nothing in the record suggests that the Plaintiff and its principal were not sufficiently sophisticated so as to misunderstand the jury trial waiver.  In fact, the current state of the record is the opposite.  The Debtor

and its principal appear to be sophisticated in these matters, as is evident by the size of the Debtor's business operations and the amount of the credit arrangement with FirstMerit.   Third, the waivers were conspicuous.   The waivers were separately paragraphed in the loan documents, they had a clear heading, and some were boldly written.

Therefore, this Court finds that the eleventh factor, the existence of a right to a jury trial, does not support remand and abstention, as it appears that the Debtor effectively waived its jury rights by virtue of the several jury waiver provisions contained within the loan documents.

**(12)   The presence in the proceeding of non-debtor parties.**

FirstMerit avers that "there are no remote third parties that are strangers to and could be unwittingly pulled into this Court." The Court agrees, and no one has suggested that any other parties are necessary and indispensable who must be joined as additional parties to the Lawsuit.   Thus, this factor weighs against remand and abstention.

### III.

After weighing the factors for permissive abstention, this Court finds that the weight of the factors favor the denial of the Motion.   As a consequence, the Court declines to abstain from hearing the Lawsuit.

This result is further appropriate because the Lawsuit has been proceeding in this Court for some time.   The balance of the equities dictate that it is not in the interest of anyone to remand the litigation back to the state trial court given its duration before this Court, the fact that discovery has been

ongoing, and the fact that the parties had requested on several occasions that these matters be held by the Court in abeyance while the parties attempt to settle their disputes. See Southwinds Assocs., Ltd., 115 B.R. at 861 (matter not remanded when substantial amount of time had been expended by the parties to the action).  The Motion is therefore denied, and an appropriate order will be entered.


Date:  December 2, 2015                    _____/s/ Jeffery A. Deller
                                           JEFFERY A. DELLER
                                           Chief U.S. Bankruptcy Judge       FILED
                                                                             12/2/15 9:22 am
                                                                             CLERK
                                                                             U.S. BANKRUPTCY
                                                                             COURT - PGH
Case Administrator to Serve:
John Steiner, Esq., Chapter 7 Trustee
Beth Slaby, Esq. and Scott Schreiber, Esq., Counsel to FirstMerit Bank, N.A.
Robert Bernstein, Esq., Counsel to Castle Cheese, Inc. and Mr. George Myrter